UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO  DIVISION



UNITED STATES OF AMERICA

v.

WILLIAM JAY DEATRICK

CASE NO. 6:10-cr-209-orl-18kr3
18 U.S.C. § 371
18 U.S.C. § 666(a)(1)(B)
18 U.S.C. § 981(a)(1)(C) --Forfeiture
28 U.S.C. § 2461(c) -- Forfeiture

## INDICTMENT

The Grand Jury charges:

## Introduction

At all times material to this Indictment:

1.      The Brevard Family of Housing was located in the City of Merritt Island in Brevard County, Florida in the Middle District of Florida.  The Brevard Family of Housing was a local government agency and an organization comprised of the following three housing authorities: (a) the Housing Authority of Brevard County, (b) the Housing Authority of the City of Cocoa, and (c) the Melbourne Housing Authority.

2.      The Brevard Family of Housing was an entity that received federal funding from the United States Department of Housing and Urban Development ("HUD") to subsidize housing complexes controlled by the Brevard Family of Housing.  The federal funding for these three housing authorities was managed by the Brevard Family of Housing.

3.      The federal funding received by the Brevard Family of Housing included what is known as "Section 8" and "Section 9" funding.

4.     Pursuant to Section 8 of the United States Housing Act of 1937, HUD administers programs providing rental and utility payment assistance to low and moderate income families.  Under the Section 8 programs, HUD contracts directly with private and public landlords to pay a portion of the market rent of qualifying tenants and enters into contribution contracts with public housing agencies.  HUD pays operating subsidies to housing authorities in order to provide Section 8 financial assistance, among other things.

5.     Pursuant to Section 9 of the United States Housing Act of 1937, HUD administers programs providing Public Housing Authorities ("PHA's") with modernization funding through what is known as the Capital Fund Program ("CFP").  Under the CFP, HUD provides funds annually via a formula to PHA's across the country.  PHA's may use CFP grants for development, financing, modernization and management improvements.

6.     Since at least 2002, the Brevard Family of Housing has been the recipient of federal assistance.  In particular, since at least 2002, the Brevard Family of Housing has received on an annual basis benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance.

7.     WILLIAM JAY DEATRICK was hired in 2002 by the Brevard Family of Housing as the Director of Facilities.  As part of his duties as an employee of the Brevard Family of Housing, WILLIAM JAY DEATRICK was responsible for managing the Brevard Family of Housing's CFP account.  In connection with those responsibilities, WILLIAM JAY DEATRICK was authorized to act on behalf of the Brevard Family of

2

Housing by, among other things, interfacing with non-profit entities that were under contract with the Brevard Family of Housing, consulting with those non-profit entities for the purpose of assisting them in fulfilling their obligations under their contracts and in obtaining payment for their services through the CFP account, and approving payment from CFP funds.  WILLIAM JAY DEATRICK was not authorized to engage in any outside employment, enterprise, or other activity, whether paid or unpaid, which would interfere, be inconsistent, incompatible, or in legal, ethical, or technical conflict with his duties or with the functions and responsibility of the department for which he worked, unless he received prior approval from his supervisor or department head in writing.

**COUNT ONE**

8.     The allegations contained in paragraphs 1 through 7 of this Indictment are hereby realleged and incorporated herein by reference.

9.     Beginning on or about a date unknown to the Grand Jury, but not later than in or about April 2004, and continuing at least until in or about October 2006, in Brevard County, Florida, in the Middle District of Florida, and elsewhere,

**WILLIAM JAY DEATRICK**

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with other persons both known and unknown to the Grand Jury to commit the following offenses against the United States:

a.     Being an agent of a local government agency and an organization that received in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other

3

forms of Federal assistance, to knowingly, willfully, and corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such organization, government, and agency involving any thing of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B);

b.     In a matter within the jurisdiction of the executive branch of the Government of the United States, to knowingly and willfully falsify, conceal, and cover up by any trick, scheme, and device a material fact, in violation of Title 18, United States Code, Section 1001(a)(1); and

c.     For the purpose of influencing in any way the action of the United States Department of Housing and Urban Development, to knowingly and willfully make, pass, utter, and publish any statement, knowing the same to be false, in violation of Title 18, United States Code, Section 1010.

### A. Manner and Means

10.     It was part of the conspiracy that WILLIAM JAY DEATRICK would and did use his position as Director of Facilities to solicit and obtain bribes and gratuities from the owner of Landview Maintenance in return for assisting Landview Maintenance in obtaining business with the Brevard Family of Housing and for approving requests for payment to Landview Maintenance in response to the fraudulent invoices that were submitted by Landview Maintenance to the Brevard Family of Housing.

4

11.     It was a further part of the conspiracy that the owner of Landview Maintenance would and did submit fraudulent invoices to the Brevard Family of Housing for payment.

12.     It was a further part of the conspiracy that WILLIAM JAY DEATRICK would and did approve those fraudulent invoices for payment from CFP funds.  In approving those payments, WILLIAM JAY DEATRICK initialed a HUD-50080-COMP form in which he certified that "the data reported and funds requested on this voucher are correct and the amount requested is not in excess of immediate disbursement needs for this program," when, in truth and in fact, as he then and there well knew, the invoices were fraudulent.  WILLIAM JAY DEATRICK also concealed and covered up the material facts that he was being paid by the owner of Landview Maintenance for assisting Landview Maintenance in obtaining business with the Brevard Family of Housing and for approving payment to Landview Maintenance in response to the fraudulent invoices that were submitted.

13.     It was a further part of the conspiracy that the owner of Landview Maintenance would and did use a portion of the CFP funds that were received to pay WILLIAM JAY DEATRICK to influence WILLIAM JAY DEATRICK and reward WILLIAM JAY DEATRICK for assistance in obtaining business for Landview Maintenance with the Brevard Family of Housing.  Those payments were made to WILLIAM JAY DEATRICK by check, cashier's check, and cash.

14.     It was a further part of the conspiracy that the owner of Landview Maintenance would and did use those payments of money to WILLIAM JAY DEATRICK to influence WILLIAM JAY DEATRICK and reward him for a transaction and series of

5

transactions of the Brevard Family of Housing that involved something worth $5,000 or more.

15.     It was a further part of the conspiracy that WILLIAM JAY DEATRICK and other co-conspirators known and unknown to the Grand Jury, would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### B. Overt Acts

16.     In furtherance of and to affect the objectives of the conspiracy, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a.     On or about September 24, 2004, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance wrote a check payable to WILLIAM JAY DEATRICK in the amount of $7,840.

b.     On or about September 27, 2004, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the check that he received from the owner of Landview Maintenance in the amount of $7,840.

c.     On or about February 10, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $10,900.

d.     On or about February 15, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $10,900.

6

e.     On or about March 7, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $9,100.

f.     On or about March 8, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $9,100.

g.     On or about April 8, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $12,100.

h.     On or about April 9, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $12,100.

i.     On or about April 22, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $9,690.

j.     On or about April 26, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $9,690.

k.     On or about April 29, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $10,370.

l.     On or about May 6, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he

received from the owner of Landview Maintenance in the amount of $10,370, less $2,000 in cash that WILLIAM JAY DEATRICK received at the time of the transaction.

        m.     On or about August 2, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $11,000.

        n.     On or about August 8, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $11,000.

        o.     On or about August 18, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $12,390.

        p.     On or about August 19, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $12,390.

        q.     On or about September 1, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $12,000.

        r.     On or about September 6, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $12,000, less $6,000 in cash that WILLIAM JAY DEATRICK received at the time of the transaction.

8

s.     On or about October 17, 2005, in Brevard County, Florida, in the Middle District of Florida, the owner of Landview Maintenance obtained a cashier's check made payable to WILLIAM JAY DEATRICK in the amount of $7,000.

t.     On or about October 18, 2005, in Brevard County, Florida, in the Middle District of Florida, WILLIAM JAY DEATRICK deposited the cashier's check that he received from the owner of Landview Maintenance in the amount of $7,000, less $4,500 in cash that WILLIAM JAY DEATRICK received at the time of the transaction.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE

17.     The allegations contained in paragraphs 1 through 7 of this Indictment are hereby realleged and incorporated herein by reference.

18.     On or about the dates set forth below, in Brevard County, in the Middle District of Florida, and elsewhere,

### WILLIAM JAY DEATRICK

the defendant herein, being an agent of a local government agency and an organization that received in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance, did knowingly, willfully, and corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such organization, government, and agency involving any thing of value of $5,000 or more, in that the defendant solicited,

9

demanded, accepted, and agreed to accept payment from the owner of Landview

Maintenance to influence the defendant and reward the defendant for assistance in

obtaining business for Landview Maintenance with the Brevard Family of Housing:

| Count | Date | Thing of Value |
|-------|------|----------------|
| Two | 8/8/2005 | $11,000 cashier's check made payable to the defendant, with the owner of Landview Maintenance as the remitter |
| Three | 8/19/2005 | $12,390 cashier's check made payable to the defendant, with the owner of Landview Maintenance as the remitter |
| Four | 9/6/2005 | $12,000 cashier's check made payable to the defendant, with the owner of Landview Maintenance as the remitter |
| Five | 10/18/2005 | $7,000 cashier's check made payable to the defendant, with the owner of Landview Maintenance as the remitter |

All in violation of Title 18, United States Code, Section 666(a)(1)(B) and Title 18,

United States Code, Section 2.

## FORFEITURE

1.     The allegations contained in Counts One through Five of this Indictment

are hereby realleged and incorporated by reference for the purpose of alleging

forfeitures pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     From his engagement in the violations alleged in Counts One through Five

of this Indictment, punishable by imprisonment for more than one year, the defendant

### WILLIAM JAY DEATRICK

shall forfeit to the United States of America, pursuant to Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his

10

interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

      3.     If any of the property described in paragraphs 1 or 2, as a result of any act or omission of any defendant:

           a.     cannot be located upon the exercise of due diligence;

           b.     has been transferred or sold to, or deposited with, a third party;

           c.     has been placed beyond the jurisdiction of the court;

           d.     has been substantially diminished in value; or

           e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL,

_Frank Burkett_
Foreperson

A. BRIAN ALBRITTON
United States Attorney

By: _RBHH_

Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

By: _RBA+H_

I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division

11

# UNITED STATES DISTRICT COURT

Middle District of Florida
Orlando Division

## THE UNITED STATES OF AMERICA

vs.

WILLIAM JAY DEATRICK

## INDICTMENT

Violations:

18 U.S.C. § 371
18 U.S.C. § 666(a)(1)(B)

A true bill,

_____
Foreperson

Filed in open court this 4th day

of August, 2010.

_____
Clerk

Bail  $_____